IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BLACKBURNE & SONS REALTY CAPITAL CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>RICK L. ANDERSON, SHEILA ANDERSON, LOYAL E. ANDERSON, and L.E. ANDERSON BROS. OIL CO.,<br><br>Defendants. | Case No. 18-CV-1115-NJR-RJD |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court is a motion for default judgment filed by Plaintiff Blackburne & Sons Realty Capital Corporation ("Blackburne") (Doc. 42). For the reasons set forth below, the Court grants the motion.

On October 31, 2018, Blackburne, as the servicing and enforcement agent of the holders of secured indebtedness concerning this litigation, filed a First Amended Complaint ("the Complaint") against Defendants Rick L. Anderson, Sheila Anderson, Loyal E. Anderson, and L.E. Anderson Bros. Oil Co. (collectively "Defendants") (Doc. 31). The Complaint seeks to foreclose a Mortgage and Assignment of Rents ("the Mortgage") that Rick, Sheila, and Loyal Anderson executed in favor of Blackburne as security for a Promissory Note ("the Note"). As additional security for the Note, Defendant L.E. Anderson Bros. Oil Co. executed a Corporate Guaranty of Loan ("the Guaranty"), which guarantees the prompt and full repayment of all principal and interest owed under the

Note. The Complaint asserts a breach of contract claim against L.E. Anderson Bros. Oil Co. for breaching its obligations under the Guaranty.

The undersigned district judge has subject matter jurisdiction over this case pursuant to the federal diversity statute, 28 U.S.C. § 1332. Blackburne, and the lenders it represents, are alleged to be citizens of the State of California. Defendants are alleged to be citizens of the State of Illinois. The amount in controversy is alleged to exceed $75,000, exclusive of interests and costs.

Defendants were served on October 31, 2018, yet they failed to answer or otherwise respond to the Complaint (*See* Doc. 32). On November 28, 2018, Blackburne moved for a Clerk's Entry of Default pursuant to Federal Rule of Civil Procedure 55(a), which was entered by the Clerk on November 29, 2018 (Docs. 40 and 41). On December 4, 2018, Blackburne moved for default judgment pursuant to Federal Rule of Civil Procedure 55(b) (Doc. 42).

Default judgment pursuant to Rule 55(b)(2) must be entered by the Court, and the Court may conduct a hearing if it needs to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." FED. R. CIV. P. 55(b)(2). Rule 55(b)(2) requires a plaintiff to establish the following: "(1) when and against what party the default was entered; (2) identification of the pleading as to which default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the defendant is not in military services such that the Soldiers' and Sailors' Civil Relief Act of 1940 does not

apply; and (5) that notice has been served on the defaulting party, if required by Rule 55(b)(2)." *UMG Recordings, Inc. v. Stewart*, 461 F. Supp. 2d 837, 841 (S.D. Ill. 2006).

All of the requirements for entry of a default judgment under Rule 55(b)(2) are satisfied here, and the Court does not find that a hearing is necessary. As discussed, default was entered against Defendants on November 29, 2018 (Doc. 41). Blackburne submitted an affidavit from its Vice President, Angela Vannucci, stating that Defendants are not infants (Doc. 44, Ex. 1). Ms. Vannucci also attested that Defendants were not incompetent at the time they executed the Note, Mortgage, and Guaranty (the "Loan Documents"), and she has no information to suggest the status of Defendants' competency has changed (Doc. 44, Ex. 1). Additionally, an affidavit from Wendy Kaleta Gattone states that according to the United States Department of Defense's online database, none of Defendants are currently in active duty of any branch of the United States Armed Forces (Doc. 44, Ex. 2). The motion for default judgment comports with Federal Rule of Civil Procedure 54(c) by requesting relief that does "not differ in kind from, or exceed in amount," what was demanded in the Complaint (Doc. 31). Blackburne also has complied with Southern District of Illinois Local Rule 55.1(b) by mailing a copy of the motion to Defendants' last known addresses.

Additionally, under Illinois law, when a party does not submit a verified answer denying the facts in the complaint, then a "sworn verification of the complaint or a separate affidavit setting forth such fact is sufficient evidence thereof against such party and no further evidence of such fact shall be required." 735 ILCS 5/15-1506(a)(1). The Court may enter a judgment of foreclosure "upon motion supported by an affidavit

stating the amount which is due the mortgagee . . . where all the allegations of fact in the complaint have been proven by verification of the complaint or affidavit." 735 ILCS 5/15-1506(a)(2). In this case, Ms. Vannucci attested to the allegations of fact in the Complaint and set forth the amount due (Doc. 44, Ex. 1).

Thus, the Court **GRANTS** the Motion for Default Judgment against Defendants (Doc. 42) and **FINDS**:

1. Defendants Rick L. Anderson, Sheila Anderson, Loyal E. Anderson, and L.E. Anderson Bros. Oil Co. have failed to appear, answer, or otherwise plead in this case, and all material allegations of the Complaint are confessed against Defendants, proved by competent record evidence, and true.

2. According to the Loan Documents alleged in the Complaint, Plaintiff Blackburne is owed the following amount and has a valid and subsisting lien upon the property described below:

    a. for Expenses and Attorney's Fees through January 15, 2019:

| | |
|---|---|
| Expenses: | $ 2,301.58 |
| Attorney's Fees (McFadden & Dillon, P.C.): | $ 18,809.00 |
| **TOTAL:** | **$ 21,110.58;** |

    b. for the use and benefit of Blackburne as owner and holder of the Note and Mortgage, but subject and subordinate to the lien for the payment of the items mentioned in subparagraph (a) of this paragraph, as of January 15, 2019:

| | | |
|---|---|---|
| Principal Amount Due | $ | 211,860.30 |
| Interest Accrued 10/01/17 to 01/15/19 | $ | 35,225.31 |
| Default Interest from 03/10/18 to 01/15/19 | $ | 5,384.78 |
| Late Charges | $ | 3,501.90 |
| Site Inspection Fee | $ | 1,041.00 |
| Title Search Fees | $ | 3,650.00 |
| Annual Insurance Receiver Policy | $ | 5,290.00 |
| *Less*: Borrower Funds Applied to Balance | $ | (431.91) |
| | $ | **265,521.38;**[1] |

    c.    and for such advances made in order to protect the lien of the judgment and preserve the real estate and personal property, such as, but not limited to, property inspections, real estate taxes or assessments, property maintenance, and insurance premiums incurred by Blackburne after the date that this Judgment is entered and prior to the judicial sale. Any such item expended shall become an additional indebtedness secured by the judgment lien and bear interest from date of advance at the legal rate.

    d.    Therefore, the total amount due as of January 15, 2019 (with attorney's fees through January 15, 2019) is **$286,631.96** (Total under the Note) + (Total Expenses and Attorney's Fees through January 15, 2019).

    e.    This Court has reviewed the foregoing costs and attorney's fees and finds that they were necessarily incurred in connection with the prosecution of this suit. They are fair, reasonable, and customary, and they are approved and allowed.

3a.    The Mortgage constitutes a valid lien upon real estate which is prior, paramount, and superior to the rights and interest of all other parties and non-record

---

[1] Pursuant to the terms of the Note, interest continues to accrue on the unpaid principal balance.

claimants in and to the property described below. Upon entry of this Judgment, the rights of Blackburne shall be secured by liens upon the mortgaged real estate and personal property identified in the Loan Documents, which liens shall have the same priority as the Mortgage upon which the Judgment relates. The rights and interest of all other parties are subject, subordinate, and inferior to the rights of Blackburne herein.

3b. The lien rights of Blackburne and the right, title, interest, claim, or lien of any and all parties in this foreclosure shall be terminated upon the confirmation of a judicial sale.

4. The Mortgage described in the Complaint and hereby foreclosed appears of record in the Office of the Wabash County Clerk/Recorder as Document No. 201674103, and the property herein referred to and directed to be sold is described as follows:

> TRACT 1: SUBLOT NUMBER THREE (3) OF INLOT NUMBER FOUR HUNDRED SEVENTY-SEVEN (477) IN THE CITY OF MT. CARMEL, ILLINOIS; ALSO, EIGHTEEN (18) FEET OF EVEN WIDTH OFF OF THE WEST END OF LOT NUMBER FIVE (5) OF THE NORTH HALF (N 1/2) OF INLOT NUMBER TWO HUNDRED SEVENTEEN (217) IN THE CITY OF MT. CARMEL, ILLINOIS. ALSO, A PARCEL OF LAND FIVE (5) FEET OF EVEN WIDTH OFF OF THE NORTH SIDE OF THE SOUTH HALF (S 1/2) OF INLOT NUMBER FOUR HUNDRED SEVENTY-SEVEN (477) IN THE CITY OF MT. CARMEL, ILLINOIS, SITUATED IN THE COUNTY OF WABASH, IN THE STATE OF ILLINOIS.
>
> TRACT 2: A PART OF SUBLOT ONE (1) OF ANDREWS' SUBDIVISION OF LOT TWO (2) OF OUT LOT SIXTEEN (16) AND SUB LOT NUMBER THREE (3) OF LOT "G" OF FICKLIN'S ADDITION TO THE CITY OF MT. CARMEL, DESCRIBED BY METES AND BOUNDS AS FOLLOWS , TO-WIT: COMMENCING AT A POINT ON THE NORTH LINE OF FOURTH STREET, ONE HUNDRED FIVE FEET AND TEN INCHES (105'0") WESTERLY FROM THE WEST LINE OF HACKBERRY STREET; THENCE RUNNING NORTHERLY, PARALLEL WITH HACKBERRY STREET, ONE HUNDRED NINETY-TWO (192) FEET, MORE OR LESS , TO CLOSE

WITH THE SOUTH LINE OF AN ALLEY RUNNING EASTERLY AND WESTERLY; THENCE RUNNING WESTERLY ON THE SOUTH LINE OF SAID ALLEY TEN (10) FEET; THENCE SOUTHERLY, PARALLEL WITH HACKBERRY STREET, ONE HUNDRED NINETY-TWO (192) FEET, MORE OR LESS, TO CLOSE WITH THE NORTH LINE OF FOURTH STREET; THENCE EASTERLY, ON THE NORTH LINE OF FOURTH STREET, TEN (10) FEET TO THE PLACE OF BEGINNING;

AND LOT NUMBER SEVEN (7) OF ANDREWS' SUBDIVISION OF PART OF OUT LOT SIXTEEN (16) AND OF SUB LOT NUMBER THREE (3) OF LOT "G" OF FICKLIN'S ADDITION TO THE CITY OF MT. CARMEL, ACCORDING TO PLAT OF SAID SUBDIVISION RECORDED IN PLAT BOOK "1" ON PAGES 66–67, OF THE RECORDS IN THE RECORDER'S OFFICE OF WABASH COUNTY, ILLINOIS, SITUATED IN THE COUNTY OF WABASH, IN THE STATE OF ILLINOIS.

TRACT 3: THE WESTERLY HALF OF SUBLOT NUMBER FOUR (4) OF THE SUBDIVISION OF OUTLOT NUMBER TWO HUNDRED AND TWO (202) IN THE CITY OF MT. CARMEL, ACCORDING TO PLAT OF SAID OUT LOT RECORDED IN DEED RECORD "L" PAGE 246 OF THE RECORDS IN THE RECORDER'S OFFICE OF WABASH COUNTY, ILLINOIS, SITUATED IN THE COUNTY OF WABASH, IN THE STATE OF ILLINOIS.

TRACT 4: SUBLOT NUMBER TWENTY-EIGHT (28) OF OUTLOT, OR BLOCK NUMBER TWO HUNDRED AND FOURTEEN (214) OF COWLING'S SUBDIVISION, IN THE CITY OF MT. CARMEL, RECORDED IN PLAT BOOK "1" ON PAGE 5, BEING IN SECTION 20, TOWNSHIP 1 SOUTH, RANGE 12 WEST OF THE SECOND PRINCIPAL MERIDIAN, SITUATED IN THE COUNTY OF WABASH, IN THE STATE OF ILLINOIS.

TRACT 5: A PART OF THE EAST HALF (E/2) OF IN LOT NO. TWO HUNDRED FIFTY-FIVE (255) IN THE CITY OF MT. CARMEL, ILLINOIS, MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHEAST CORNER OF IN LOT NO. 255, THENCE RUNNING IN A NORTHERLY DIRECTION ALONG THE EASTERLY LINE OF SAID IN LOT, A DISTANCE OF 191.75 FEET TO THE SOUTH LINE OF AN ALLEY; THENCE IN A WESTERLY DIRECTION ALONG THE SOUTH LINE OF SAID ALLEY, A DISTANCE OF 11.67 FEET; THENCE IN A SOUTHERLY DIRECTION, A DISTANCE OF 105.25 FEET; THENCE IN A WESTERLY DIRECTION, A DISTANCE OF 38.33 FEET TO THE WEST LINE OF THE EAST HALF (E/2) OF SAID IN LOT; THENCE IN A SOUTHERLY DIRECTION A DISTANCE OF 86.5 FEET TO THE SOUTH LINE OF SAID

IN LOT; THENCE IN AN EASTERLY DIRECTION, A DISTANCE OF 50 FEET TO THE POINT OF BEGINNING; SITUATED IN THE COUNTY OF WABASH, IN THE STATE OF ILLINOIS.

TRACT 6: SUBLOT THIRTY-THREE (33) OF COWLING'S ADDITION OF THE SUBDIVISION OF OUTLOTS 214 AND 216 IN THE CITY OF MT. CARMEL, ILLINOIS, SECTION 20, TOWNSHIP 1 SOUTH, RANGE 14 WEST, AS SHOWN BY PLAT RECORDED IN PLAT BOOK VOLUME "1," PAGE 5, OF THE PLAT RECORDS IN THE WABASH COUNTY RECORDER'S OFFICE, SITUATED IN THE COUNTY OF WABASH, IN THE STATE OF ILLINOIS.

TRACT 7: SUB LOT NUMBER FOUR (4) OF OUT LOT NUMBER TWO HUNDRED THREE (203) IN THE CITY OF MT. CARMEL, ACCORDING TO A PLAT RECORDED IN DEED RECORD "O" AT PAGE 572, IN THE WABASH COUNTY RECORDER'S OFFICE, SITUATED IN THE COUNTY OF WABASH, IN THE STATE OF ILLINOIS.

TRACT 8: A PART OF LOT NUMBER "A" OF THE SUBDIVISION OF A PART OF OUTLOT NUMBER EIGHTEEN (18) IN THE CITY OF MT. CARMEL, AS SHOWN BY PLAT RECORDED IN PLAT RECORD "1," PAGE 209 OF THE RECORDS IN THE RECORDER'S OFFICE OF WABASH COUNTY, ILLINOIS, DESCRIBED BY METES AND BOUNDS AS FOLLOWS: COMMENCING AT A POINT WHICH IS 48.5 FEET EAST AND 30 FEET SOUTH OF THE NORTHWESTERLY CORNER OF SAID LOT "A"; THENCE SOUTHERLY ON A LINE PARALLEL WITH THE WESTERLY LINE OF SAID LOT "A," 99 FEET; THENCE EASTERLY ON A LINE PARALLEL WITH THE NORTHERLY LINE OF SAID LOT "A," 36 1/2 FEET: THENCE NORTHERLY ON A LINE PARALLEL WITH THE WESTERLY LINE OF SAID LOT "A," 99 FEET; THENCE WESTERLY ON A LINE PARALLEL WITH THE NORTHERLY LINE OF SAID LOT "A ," 36 1/2 FEET TO THE PLACE OF BEGINNING;
ALSO, A PART OF LOT NUMBER "A" OF THE SUBDIVISION OF A PART OF OUTLOT NUMBER EIGHTEEN (18) IN THE CITY OF MT. CARMEL, AS SHOWN BY PLAT RECORDED IN PLAT RECORD "1," PAGE 209 OF THE RECORDS IN THE RECORDER'S OFFICE OF WABASH COUNTY, ILLINOIS, DESCRIBED BY METES AND BOUNDS AS FOLLOWS: COMMENCING AT A POINT WHICH IS 48.5 FEET EAST AND 129 FEET SOUTH OF THE NORTHWESTERLY CORNER OF SAID LOT "A" ; THENCE SOUTHERLY ON A LINE PARALLEL WITH THE WESTERLY LINE OF SAID LOT "A," 35.8 FEET; THENCE EASTERLY ON A LINE PARALLEL WITH THE NORTHERLY LINE OF SAID LOT "A," 36 1/2 FEET; THENCE NORTHERLY ON A LINE PARALLEL WITH THE WESTERLY LINE OF SAID LOT "A," 35.8 FEET; THENCE WESTERLY ON

A LINE PARALLEL WITH THE NORTHERLY LINE OF SAID LOT "A," 36 1/2 FEET TO THE PLACE OF BEGINNING; SITUATED IN THE COUNTY OF WABASH, IN THE STATE OF ILLINOIS.

TRACT 9: A PART OF IN LOT 13 IN THE CITY OF MT. CARMEL, BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING ON THE WEST LINE OF SAID IN LOT AT A POINT 141 1/2 FEET NORTHERLY FROM THE SOUTHWEST CORNER THEREOF; AND RUNNING THENCE NORTHERLY ON SAID WEST LINE TO THE NORTHWEST CORNER OF SAID IN LOT; THENCE EASTERLY ON THE NORTH LINE OF SAID IN LOT TO THE WEST LINE OF CHERRY STREET; THENCE SOUTHERLY TO A POINT 141 1/2 FEET NORTHERLY FROM THE SOUTHEAST CORNER OF SAID IN LOT; THENCE WESTERLY PARALLEL WITH THE FIRST STREET TO THE PLACE OF BEGINNING; SITUATED IN THE COUNTY OF WABASH, IN THE STATE OF ILLINOIS.

TRACT 10: LOT NUMBER FORTY-FOUR (44) OF THE KIEFFER SUBDIVISION, BEING A PART OF THE SOUTHEAST QUARTER (SE/4) OF THE NORTHWEST QUARTER (NW/4) OF SECTION TWENTY-NINE (29), TOWNSHIP ONE (1) SOUTH, RANGE TWELVE (12) WEST OF THE 2ND PRINCIPAL MERIDIAN, WABASH COUNTY, ILLINOIS, AS SHOWN ON A PLAT RECORDED IN PLAT RECORD 2, SLIDE 132, IN THE WABASH COUNTY RECORDER'S OFFICE, SITUATED IN THE CITY OF MT. CARMEL, COUNTY OF WABASH, IN THE STATE OF ILLINOIS.

    a.    Common addresses:

| | |
|---|---|
| Tract 1: | 407 Market St., Mount Carmel, IL 62863 |
| Tract 2: | 904–906 W. 4th St., Mount Carmel, IL 62863 |
| Tract 3: | 415 W. 5th St., Mount Carmel, IL 62863 |
| Tract 4: | 215 W. 11th St., Mount Carmel, IL 62863 |
| Tract 5: | 406 E. 5th St., Mount Carmel, IL 62863 |
| Tract 6: | 223 W. 10th St., Mount Carmel, IL 62863 |
| Tract 7: | 418 N. Walnut St., Mount Carmel, IL 62863 |
| Tract 8: | 905 W. 4th St., Mount Carmel, IL 62863 |
| Tract 9: | 114 N. Cherry St., Mount Carmel, IL 62863 |
| Tract 10: | 111 S. Elm St., Mount Carmel, IL 62863 |

b.  Property Identification Numbers (PINs):

<u>Tract 1</u>:   05-211-20-422-019
<u>Tract 2</u>:   05-211-29-122-015 and 05-211-29-122-009
<u>Tract 3</u>:   05-211-29-202-010
<u>Tract 4</u>:   05-211-20-214-010
<u>Tract 5</u>:   05-211-21-304-017-01
<u>Tract 6</u>:   05-211-20-216-002
<u>Tract 7</u>:   05-211-29-203-003
<u>Tract 8</u>:   05-211-29-133-010
<u>Tract 9</u>:   05-211-28-101-003
<u>Tract 10</u>:  05-211-29-139-044

5. The mortgaged real estate is *not* residential property as defined in Section 15-1219 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1219).

6. The mortgagors have the right of redemption pursuant to 735 ILCS 5/15-1603(b), which right expires three months from the entry of this Judgment.

7. Judgment be entered in favor of Blackburne and against Defendants, Rick L. Anderson, Sheila Anderson, Loyal E. Anderson, and L.E. Anderson Bros. Oil Co. on Count I of the Complaint, and the Mortgage described in paragraph 4 herein, securing the indebtedness set forth in paragraph 2 herein, is hereby foreclosed against all Defendants.

8. Judgment be entered in favor of Blackburne and against Defendant L.E. Anderson Bros. Oil Co. on Count II of the Complaint.

9. Unless, within time allowed by law, Rick L. Anderson, Sheila Anderson, or Loyal E. Anderson pays to Blackburne the amounts set forth in paragraphs 2(a) through 2(d) of this Judgment, with statutory interest thereon except for interest on attorney's

fees, or, if the premises are not redeemed within the time allowed by law as prescribed by Sections 15-1603(b)(d)(e) and (f) of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1603(b),(d)–(f)), and the reinstatement period provided for by Section 15-1602 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1602) has expired, the real estate described above in paragraph 4, with all improvements, fixtures, and appurtenances thereto, or so much of the real estate which may be divisible and sold separately without material injury to the parties in interest, shall, on a future motion of Blackburne, be sold either (i) at public auction to the highest bidder for cash by a special commissioner to be appointed by the Court in this matter, at a time and place to be selected by the special commissioner; or (ii) by the Court-appointed Receiver, R. Baker Thompson of RBT Advisors, LLC, pursuant to approval of the contract for sale by this Court.

10. A special commissioner appointed to execute this Judgment shall, either by itself or by designation of Blackburne to do so, give public notice of the time, place, and terms of such sale by publishing same once in each week for three consecutive calendar weeks (Sunday through Saturday), the first such notice to be published not more than forty-five days prior to the sale, and the last such notice to be published not less than seven days prior to the sale, by the following:

    a. advertisement in a newspaper circulated to the general public in the county in which the real estate is located, in the section where legal notices are commonly placed; and

    b. separate advertisement, which may be in the same newspaper, in the section where real estate, other than real estate being sold in legal proceedings, is

fees, or, if the premises are not redeemed within the time allowed by law as prescribed by Sections 15-1603(b)(d)(e) and (f) of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1603(b),(d)–(f)), and the reinstatement period provided for by Section 15-1602 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1602) has expired, the real estate described above in paragraph 4, with all improvements, fixtures, and appurtenances thereto, or so much of the real estate which may be divisible and sold separately without material injury to the parties in interest, shall, on a future motion of Blackburne, be sold either (i) at public auction to the highest bidder for cash by a special commissioner to be appointed by the Court in this matter, at a time and place to be selected by the special commissioner; or (ii) by the Court-appointed Receiver, R. Baker Thompson of RBT Advisors, LLC, pursuant to approval of the contract for sale by this Court.

10. A special commissioner appointed to execute this Judgment shall, either by itself or by designation of Blackburne to do so, give public notice of the time, place, and terms of such sale by publishing same once in each week for three consecutive calendar weeks (Sunday through Saturday), the first such notice to be published not more than forty-five days prior to the sale, and the last such notice to be published not less than seven days prior to the sale, by the following:

    a. advertisement in a newspaper circulated to the general public in the county in which the real estate is located, in the section where legal notices are commonly placed; and

    b. separate advertisement, which may be in the same newspaper, in the section where real estate, other than real estate being sold in legal proceedings, is

commonly advertised to the public, provided, however, that where the newspaper does not have separate legal notices and real estate advertisement sections, a single advertisement with the legal description shall be sufficient; and

    c.    such other publications as may be further ordered by the Court.

11.    The sale may be adjourned at the discretion of the party conducting it, provided, however, that if the adjourned sale date is to occur less than sixty days after the last scheduled sale, notice need be given only once, not less than five days prior to the date of the adjourned sale.

12.    Blackburne, or any of the parties herein, may become the purchaser at such sale. If Blackburne is the successful bidder at the sale, the amount due Blackburne, plus all costs, advances, and fees hereunder, shall be taken as a credit on its bid.

13.    The special commissioner, upon making such sale, shall immediately execute and deliver to the purchaser a Receipt of Sale and, with all convenient speed, file a report of sale and distribution with the Court for its approval and confirmation. The special commissioner shall include in the report of sale a breakdown of the distribution of the sale proceeds and attach a copy of the Receipt of Sale. Out of the proceeds of sale, distribution shall be made in the following order of priority:

    a.    to the special commissioner for its disbursements and commissions;

    b.    to Blackburne or its attorneys, the amounts set forth in paragraph 2(a) plus any additional costs of sale;

c. and to Blackburne or its attorneys, the amounts set forth in paragraph 2(b) with statutory interest from the date hereof and 2(c) with statutory interest from the date of the respective payment.

14. If after payment of the above items there shall be a remainder, the special commissioner shall hold this surplus subject to further order of this Court. If there are insufficient funds to pay in full the amounts found due in this Judgment, the special commissioner shall specify the amount of this deficiency in the report of sale and Blackburne shall be entitled to an *in personam* deficiency judgment against Rick L. Anderson, Sheila Anderson, Loyal E. Anderson, and L.E. Anderson Bros. Oil Co., jointly and severally.

15. Upon confirmation of the sale, the party conducting the sale may issue a certificate of sale in recordable form, describing the real estate and personal property purchased and the amount paid, and this certificate shall be freely assignable after (i) the expiration of all of the mortgagors' reinstatement and redemption rights and rights to possession, (ii) upon confirmation of sale, and (iii) upon payment of the purchase price and any other amounts required to be paid by the purchaser at sale, the party conducting the sale shall, upon the request of the holder of the certificate of sale, or the purchaser if no certificate of sale was issued, execute and deliver to the holder or purchaser a deed sufficient to convey title; the conveyance shall be an entire bar to all claims of the parties to the foreclosure and all persons claiming thereunder.

16. The parties in possession of the premises and personal property, or any part thereof, or any person who may have come into such possession under them, or any of

them, since the commencement of this suit, shall, as of the date thirty days after the confirmation of the judicial sale, surrender possession of the premises to the purchaser, its representative or assigns. The order confirming the sale shall so provide, and the order shall also provide that the U.S. Marshal may execute on the order and evict any remaining occupants without further notice or order of the Court.

**IT IS SO ORDERED.**

**DATED: January 16, 2019**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**